1622 LOCUST STREET    |    PHILADELPHIA, PA  19103-6305    |    PHONE: 215/875-3000    |    FAX: 215/875-4604    |    WWW.BERGERMONTAGUE.COM



**Shauna B. Itri**
(215) 875-3049
(215) 875-4604
sitri@bm.net

December 10, 2013

**Via ECF**

The Honorable P. Kevin Castel
United States District Judge
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Court house
500 Pearl Street
New York, NY 10007

Re:   *United States et al. ex rel. Corporate Compliance Associates v. Hospital for Special Surgery et al.*, No, 07 Civ. 292 (PKC)

Dear Judge Castel:

In accordance with Your Honor's Individual Practices, Plaintiff-Relator Corporate Compliance Associates ("CCA") submits this letter in response to the letter Defendant Hospital for Special Surgery ("HSS") filed on December 6, 2013. CCA does not oppose HSS's request to file a motion to dismiss, however, CCA respectfully requests that the Court (1) deny HSS's request for limited discovery and (2) order the motion to dismiss be filed within seven days of the Court's decision regarding HSS's requests.

### A.  Substantive and Procedural Background

CCA brought this action on behalf of the United States of America and the State of New York (collectively the "Government") against defendant New York Society for the Relief of the Ruptured and Crippled, Maintaining the Hospital for Special Surgery ("HSS"), John R. Reynolds ("Reynolds"), and Michael H. Kemp ("Kemp") (collectively "Defendants") to recover statutory damages and civil penalties under the False Claims Act ("FCA"), §§ 3729 *et seq.*, and the New York State False Claims Act ("NYFCA"), NY State Fin. Law §§ 187 *et seq*.  The complaint alleges that, in violation of the federal FCA and the NYFCA, Defendants knowingly engaged in several illegal schemes which resulted in the submission of thousands of false claims to Medicare and Medicaid.

Relator filed its initial complaint under seal in January 2007 and its amended complaint under seal in June 2011.  The complaints were kept under seal, during which time the Government

conducted an investigation. Ultimately, on or about July 2013, the Government declined to intervene. On October 31, 2013, Your Honor ordered that within thirty days, the complaint be unsealed and served on the Defendants by Relator. After the unsealing, Relator filed a Third Amended Complaint on November 18, 2013[1], then timely served defendant HSS and the Government on November 19, 2013. Pursuant to Federal Rule of Civil Procedure 12(a)(1) HSS was required to serve a responsive pleading on December 10, 2013. Rather than file a responsive pleading, HSS filed the December 6, 2013 with the Court.

    **B. The False Claims Acts Generally**

The FCA expressly authorizes private individuals to bring a civil action claiming violations of the FCA "in the name of the Government." 31 U.S.C. § 3730(b)(1). When a relator brings a *qui tam* action, the government investigates the claims and chooses whether to (1) intervene in the action; (2) decline to intervene and permit the relator to conduct the action; or (3) move to dismiss the action. Apparently in an attempt to negatively influence the Court regarding Relator's allegations, in its letter HSS emphasizes the fact that the Government declined to intervene, stating "[d]espite the fact that the United States decided that the Complaint dos not warrant intervention." However, there are a variety of reasons that the government may decline to intervene in a *qui tam* suit, and courts do not assume that government declined because it considers the evidence of wrongdoing insufficient or the relator's allegations of fraud to be without merit. *United States ex rel. Feldman v. van Gorp*, 2010 U.S. Dist. LEXIS 73633, at *8 (S.D.N.Y. July 8, 2010)(granting motion in limine to exclude evidence relating to the DOJ's decision not to intervene); *United States ex rel. DeCarlo v. Kiewit/AFC Enters.*, 937 F. Supp. 1039, 1047 (S.D.N.Y. 1996) ("[N]on-intervention does not necessarily signal governmental disinterest in an action.").

Indeed, "the plain language of the Act clearly anticipates that even after the Attorney General has 'diligently' investigated a violation [of the FCA], the Government will not necessarily pursue all meritorious claims." *United States ex rel. Berge v. Bd. of Trustees*, 104 F.3d 1453, 1458 (4th Cir. 1997), *cert. denied*, 522 U.S. 916 (1997); *United States ex rel. El-Amin v. George Washington Univ.*, 533 F. Supp. 2d 12, 21 (D.D.C. 2008) (assuming non-intervention is relevant to merits of relator's claims "would seem antithetical to the purpose of the *qui tam* provision — to encourage private parties to litigate on behalf of the government" and granting motion in limine to exclude evidence regarding the government's investigation and decision not to intervene). Accordingly, the Government's decision not to intervene in this action is not relevant.

    **C. HSS's Motion to Dismiss Arguments Are Without Merit**

Although Relator does not object to HSS's request to file a motion to dismiss, Relator refutes the arguments set forth in HSS's letter.

First, in its letter to the Court, HSS weakly argues that purported seal violations occurring on July 29, 2013 and September 27, 2013 somehow deprive this Court of jurisdiction over this case.

---

[1] The Third Amended Complaint will be referred to herein as "Complaint" and citations to the Complaint will be "Compl. ¶__."

The purported breaches of the seal HSS raises are not a matter of jurisdiction, and also do not affect the question whether the complaint in this case states a claim upon which relief may be granted. As one district court recently said,

> even assuming for the sake of argument that Branch violated the requirements of § 3730(b)(2), numerous courts have held that such requirements are not jurisdictional and their violation does not require dismissal of the complaint. *See, e.g., In re Natural Gas Royalties Qui Tam Litig.*, 467 F. Supp. 2d 1117, 1228 (D. Wyo. 2006); *Wisz [ex rel. United States v. C/HCA Dev., Inc.*], 31 F. Supp. 2d [1068,] 106[9] [(N.D. Ill. 1998)]; *United States v. Fiske*, 968 F. Supp. 1347, 1352 (E.D. Ark. 1997); [*United States ex rel.*] *Mikes [v. Straus]*, 931 F. Supp. [248,] 259 [(S.D.N.Y. 1996)]; *United States ex rel. Lujan v. Hughes Aircraft Co.*, 67 F.3d 242, 245 (9th Cir. 1995); *but see Erickson [ex rel. United States v. American Inst. of Biological Scis.]*, 716 F. Supp. [908,] 912 [(E.D. Va. 1989)]. That Branch did not file its First Amended Complaint under seal neither requires dismissal nor deprives this Court of jurisdiction.

*United States ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.*, 668 F. Supp. 2d 780, 803 (E.D. LA. 2009). *See also U.S. ex rel. Mikes v. Straus*, 931 F.Supp. 248 (S.D.N.Y. 1996) ("The notification provision at issue here is a mere procedural requirement of the exercise of the right created by the statute, not a jurisdictional prerequisite. Particularly in a case such as this where the Government has not been deprived of any rights, and has asserted no objection to plaintiff's failure to comply with section 3730(b)(2)'s procedural requirements, defendants should not stand to benefit.").

This analysis is strongly supported by the fact that, indisputably, the seal provision has but one purpose:

> Keeping the *qui tam* complaint under seal for the initial 60-day time period is intended to allow the Government an adequate opportunity to fully evaluate the private enforcement suit and determine both if that suit involves matters the Government is already investigating and whether it is in the Government's interest to intervene and take over the civil action.

S. Rep. No. 99-345 at 24, *reprinted in* 1986 U.S.C.C.A.N. 5266, 5289 (July 28, 1986). The *Summers* panel squarely recognized that "[T]he [sealing] provisions of the FCA were adopted to permit the Government to determine in private whether it was already investigating the claims at issue, while at the same time preventing defendants from learning they were under investigation." 623 F.3d at 293.

Here, the Government notified the Court in writing on July 10-11, 2013 – well prior to both of the purported seal breaches – that its investigation was over and that it was declining to intervene in the action, thereby allowing Relator to pursue the allegations. Thus, any alleged seal violation is of no consequence when examined in light of the reasons that the seal exists in the first place. Moreover, once the relator has moved the case into active litigation – as has occurred in this case – it is indisputable that using allegations of a seal breach to derail discovery and trial of the Government's fraud claims is diametrically opposed to the public interest which the False Claims Act is precisely tailored to advance.

Second, Relator has pled fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.  Under Rule 9(b), the complaint must describe the "who, what, when, where and how of the events at issue." *United States ex rel. Sarafoglou v. Weill Med. College of Cornell Univ.*, 451 F. Supp. 2d 613, 623 (S.D.N.Y. 2006). However, the law does not require specificity just for specificity's sake. The level of particularity required is sufficient details to put Defendants on notice of the precise misconduct with which they are charged. *See Anglo-German Progressive Fund, Ltd. v. Concorde Group, Inc*., 2010 U.S. Dist. LEXIS 98237 (S.D.N.Y. Sept. 14, 2010). Relator's 59-page complaint is replete with details concerning HSS's fraud, including:

- **Who**: Defendant HSS, Michael Kemp and John Reynolds.  Compl. ¶¶29-31.
- **What**: "[K]nowingly: (1) engaged in a scheme to pay compensation to physicians to induce them, illegally, to refer patients to the hospital, (2) engaged in illegal kickback arrangements with billing companies, (3) illegally billed for facility fees for services performed in unlicensed facilities to obtain reimbursements it wasn't entitled to receive, and (4) improperly used billing codes to obtain higher reimbursements from Medicare and Medicaid.  Compl. ¶¶2-3, *passim*.
- **When**: 1996 to the present. Compl. ¶¶ 82-85,95.
- **Where**: Southern District of New York.  Compl. ¶24-25.
- **How**: Defendant, among other things, gave kickbacks to physicians in the form of teaching administrative, research, clinical salaries; directorships; and/or took into account the volume and value of referrals in forming financial arrangements, to induce them, illegally, to refer patients to the hospital.  Compl. ¶¶ 91-137.

Third, with regard to HSS's claims regarding plausibility of the allegations, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  On a motion to dismiss, courts are required to accept all well-pleaded allegations as true and to draw all reasonable inferences in favor of the non-moving party; a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Here, Relator has met his burden. For example, the Complaint contains statements from the former Assistant Vice President of Physician Services who was charged with negotiating physician salaries, that "the main factor in negotiating base salaries and the professional fee split was the magnitude of the associated hospital revenue generated by each physician.  Compl. ¶¶ 109-111.

Fourth, the Complaint states a claim upon which relief can be granted.  A legally false claim - express or implicit - is actionable under the FCA "where a party certifies compliance with a statute or regulation as a condition to governmental payment." *Mikes*, 274 F.3d at 697. "Conditions of payment are those which, if the government knew they were not being followed, might cause it to actually refuse payment." *United States ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1220 (10th Cir. 2008).  In the healthcare context that "implied false certification is appropriately applied only when the underlying statute or regulation upon which the plaintiff relies expressly states the provider must comply in order to be paid." *Mikes*, 274 F.3d at 700.  Here, the Complaint alleges that HSS was required to certify compliance with all Federal Regulations including the Anti-Kickback Statute to receive payment.

4

Fifth, the Complaint states a claim with respect to the causes of action that are predicated on the alleged acceptance of kickbacks by Reynolds. In arguing that liability under the FCA cannot be imputed to a corporation based on the activities of Reynolds who is acting for his own benefit, it cites a case that is superseded by statute as stated in: *United States ex rel. McCready v. Columbia/HCA Healthcare Corp.*, 251 F. Supp. 2d 114 (D.D.C. 2003). The case states that while "knowingly" used to require a level of intent akin to that required in criminal law, Congress's 1986 amendment to the FCA defined "knowingly" as including actual knowledge, deliberate ignorance, or reckless disregard. *See* 31 U.S.C. § 3729(b), added by False Claims Amendment Act of 1986, Pub. L. 99-562 § 2(b), 100 Stat. 3153 (1986). This amendment decreased the level of scienter required for a violation of the FCA and obviated the concerns about attributing the heightened level of intent of an employee to an employer.

Finally, the Complaint states claims for relief with respect to violations of the NYFCA that predate April 1, 2007. The NYFCA should be applied retroactively because the bill enacting the statute clearly and unambiguously provides that the act "shall apply to claims filed or presented prior to, on or after April 1, 2007." 2007 N.Y. Laws 58, S. 2108-c, § 93(5) (April 9, 2007). That provision leaves no doubt that the New York Legislature intended that the NYFCA would apply to claims presented before the Act was passed, such as the claims at issue here. *See U.S. v. Huron Consulting Group, Inc.*, 2010 WL 3467054, *3 (S.D.N.Y. Aug. 25, 2010) ("the Court, in agreement with the brief submitted by the New York Attorney General, concludes that the state False Claims Act, which was enacted on April 1, 2007, applies retroactively to the claims at issue, which were filed before that enactment").

### D. Discovery as to the "Apparent" Seal Violations Should be Denied

As more fully stated above, alleged seal breaches are not jurisdictional. Moreover, the alleged breaches are irrelevant because the Government concluded its investigation and declined the case in writing to this Court well prior to the purported violations. Any discovery on these alleged "breaches" would be a waste of time.

Realtor proposes that Defendant HSS file a responsive pleading within seven days of the Court's decision regarding the parties' respective letters.

                                                         Respectfully,

                                                         Shauna Itri, Esq.

cc:      Dan R. Miller, Berger & Montague, P.C. (*via e-mail*)
           Philip R. Michael, Michael Law Group (*via e-mail*)
           Sigal P. Madelker, Proskauer Rose LLP (*via e-mail*)
           Roger A. Cohen, Proskauer Rose LLP (*via e-mail*)
           Edward S. Kornreich, Proskauer Rose LLP (*via e-mail*)